**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

```
JOSEPH GEORGE NARA,            )
                               )
              Petitioner,      )    Civil Action No. 99-5
                               )
         v.                    )    Judge McVerry
                               )    Magistrate Judge Caiazza
FREDERICK FRANK,               )
Superintendent,                )
                               )
              Respondent.      )
```

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.   RECOMMENDATION**

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed by Joseph George Nara be granted to the extent that he be permitted to withdraw his guilty pleas. Furthermore, it is recommended that the Commonwealth of Pennsylvania be directed to commence trial within one-hundred and twenty days.

**II.   REPORT**

The Petitioner, Joseph George Nara ("the Petitioner" or "Nara"), a prisoner presently incarcerated at the State Correctional Institution at Huntingdon, Pennsylvania, filed a Petition for Writ of Habeas Corpus ("the Petition") pursuant to the provisions of 28 U.S.C. § 2254. He now challenges his guilty pleas to two counts of Murder in the First Degree. Stated generally, Nara asserts that he was incompetent to plead guilty and, therefore, his pleas were entered involuntarily.

**A. Relevant Factual and Procedural History**

On June 20, 1984, in the Court of Common Pleas of Fayette

County, Pennsylvania, Nara pleaded guilty to two counts of Murder in the First Degree with respect to the shooting deaths of his wife and mother-in-law. The relevant events surrounding this family tragedy follow.

On December 3, 1983, the Petitioner's wife left him after apparently subjecting him to considerable mental anguish. Parcel to his mental state, Nara claims that she was engaging in extramarital affairs with other men.[1] Because of the marital discord, Nara consulted with the Fayette County Mental Health Clinic on January 9, 1984. At that time Nara and his wife were separated but they briefly reconciled from January 14 through January 17, 1984, when she asked him to again leave their common residence. Next, on January 18, 1984, Nara attempted suicide by taking an overdose of Unisom tablets and he was then committed to the Connellsville State General Hospital.[2]  While there, he was diagnosed with a mental disorder and he was discharged on January 23, 1984, with instructions to seek follow- up treatment at the Fayette County Mental Health Center.

Five days later, on the evening of January 28, 1984, Nara telephoned his wife and informed her he was leaving town and that he wanted to first visit with his children.[3]  An argument ensued

---

1.   Doc. 87, Ex. FF, Mayview Hospital Discharge Summary Report, February 17, 1984.

2.   Doc. 87.

3.   Doc. 87.

and during the course of their animated conversation Nara informed his wife that Pennsylvania State Trooper Maharowski had a warrant for her arrest. In response, she purportedly told Nara that she was unconcerned because she was in the midst of an affair with Officer Maharowski. Apparently infuriated, Nara immediately proceeded to his wife's residence where he was met at the door by his wife's mother, who aimed a shotgun at his face. Nara retreated to his car, retrieved a 45-caliber handgun he had previously loaded and had placed in his car two days earlier, returned to the residence, forced his way inside and then shot his wife and mother-in-law. They both died from the wounds they sustained as a result of the shootings.

Nara then fled.

The day after the murders, Nara telephoned his family several times from a motel somewhere in North Carolina. He also contacted the Pennsylvania State Police and allegedly made several admissions with respect to the two murders. Shortly thereafter, Nara was arrested in North Carolina and  -after waiving extradition-  was returned to Pennsylvania and charged with two counts of homicide for the deaths of his wife and his mother-in-law. He was subsequently confined in the Fayette County Prison.

On February 9, 1984, Nara's attorney, Charles C. Gentile, Esq., filed a Petition for Mental Examination, seeking a psychiatric examination and/or a commitment to a mental institution under the Pennsylvania Mental Health and Mental

Retardation Act. *See* 50 Pa. Cons. Stat. Ann. § 4408. On February 13, 1984, Nara was admitted to the Mayview State Hospital for a period not to exceed sixty days. *See id.,* § 4408(c). He was housed there for only four days and subsequently was returned to the Fayette County Prison on February 17, 1984, because he attempted to solicit the assistance of other patients to effectuate an escape. His apparent plan was to kidnap a female staff employee or student nurse and then hold her as a hostage.[4] Lillian L. Meyers, Ph.D., who was the Director of the Regional Psychiatric Forensic Unit, contacted the state Judge who committed Nara and recommended that he be returned to the Fayette County Prison -after concluding that Nara did not appear to be mentally ill or in need of treatment.

Next, on June 20, 1984, before the Honorable William J. Franks, Nara pleaded guilty to two counts of Murder in the First Degree as part of a plea agreement. On July 13, Judge Franks sentenced Nara to two concurrent terms of life imprisonment. Nara did not file any post-verdict motions nor did he file a direct appeal to the Pennsylvania Superior Court. Subsequently, Nara was transferred to the State Correctional Institution at Pittsburgh ("SCIP").

Shortly after his arrival at SCIP, Nara was placed in the institutional hospital for psychiatric purposes and prison personnel then initiated a proceeding seeking Nara's involuntary

---

4.   Doc. 87, Ex. FF, Discharge Report.

commitment to a state mental facility.[5]  On September 10, 1984 Nara was transferred to Farview State Hospital. He remained there until mid November 1984 and was then returned to SCIP.  While at SCIP Nara was transferred to the psychiatric department of the institutional hospital because he attempted suicide. Once again - on February 19, 1985-  Nara attempted to commit suicide by ingesting an overdose of Benadryl and Serentil. As a result, prison authorities petitioned to have Nara involuntarily committed to a state mental facility, again based on the examining physician's opinion that Nara was severely mentally disabled and in need of treatment.[6]  On March 1, 1985, the Court granted the petition and Nara was again committed to Farview on March 12, 1985. On April 11, 1985, he was examined by Dr. Jane E. Perrine who concluded that Nara was incompetent due to his marked depression.[7] He remained a patient at Farview until July 22, 1986.

On April 25, 1988, Nara filed a petition for relief pursuant to the newly enacted Pennsylvania Post-Conviction Relief Act ("PCRA"). *See* 42 Pa. Cons. Stat. §§ 9541, *et. seq.* (effective date April 13, 1988). In his petition, Nara raised an ineffective assistance of counsel claim. By Opinion and Order dated October 17, 1988, the PCRA court denied Nara's petition for post-

---

5.  Doc. 87, Ex. LL.

6.  Doc. 87, Ex. MM.

7.  Doc. 87, Ex. NN.

conviction relief.[8]  Nara filed a timely appeal to the
Pennsylvania Superior Court. By Order dated March 29, 1989, the
Superior Court affirmed the Order of the PCRA court and dismissed
Nara's appeal.[9]  The Pennsylvania Supreme Court denied Nara's
Petition for Allowance of Appeal by Order dated September 21,
1989.[10]

On May 15, 1990, Nara filed a second PCRA petition wherein
he sought to withdraw his guilty pleas based on a claim of
mental incompetency. Hearings were held on June 27, 1990, and
November 19, 1990. At the hearing, Dr. Jobindar Harika  -along
with Nara  -presented testimony with respect to the Petitioner's
incompetency at the time that he entered his guilty plea; the
Commonwealth chose not to present any testimony in rebuttal.  By
Order dated January 30, 1991, the PCRA court granted the relief
which Nara sought in his petition and directed that his guilty
pleas be withdrawn.[11]  Following an appeal by the Commonwealth,
the Pennsylvania Superior Court vacated the Order of the PCRA
court on April 30, 1992, and reinstated Nara's guilty pleas,
finding that the issue of Nara's competence had been waived
because he had failed to raise it in his first post-conviction

---

8.   Doc. 87, Ex. UU.

9.   Doc. 87, Ex. WW.

10.   Doc. 87, Ex. XX.

11.   Doc. 88, Ex. CCC.

petition.[12]   The Pennsylvania Supreme Court denied Nara's
Petition for Allowance of Appeal by Order dated October 7, 1992.
Subsequently, the United States Supreme Court denied Nara's
petition for *certiorari*.

On December 21, 1995, Nara filed a third PCRA petition,
alleging that he was incompetent at the time he entered his
guilty plea. The court appointed attorney Phyllis Jin to
represent Nara and then scheduled a hearing for April 30, 1996.
At the hearing, Nara's counsel asked to withdraw his third PCRA
petition because the issue he raised was "previously litigated"
in favor of filing a motion to withdraw his guilty plea *nunc pro
tunc* pursuant to Pennsylvania Rule of Criminal Procedure 321.
The Court granted Nara's motion and issued a briefing schedule.
On June 23, 1996, Attorney Jin filed a memorandum in support of
Nara's motion to withdraw his guilty plea. By Opinion and Order
dated September 30, 1996, the Court of Common Pleas of Fayette
County denied Nara's motion to withdraw his pleas, concluding
that Nara had been advised at his sentencing hearing in 1984 of
his right to move to withdraw the pleas within ten days.[13]   In
addition, without acknowledging the fact that Nara was
hospitalized for a substantial amount of time  -and had been
diligently litigating his claims since 1988-  the court found
that Nara failed to state a compelling reason which explained his

---

12.   Doc. 88, Ex. DDD.

13.   Doc. 88, Ex. LLL.

-7-

decision to wait twelve years before he sought to withdraw his guilty pleas.  By Memorandum Opinion and Order dated July 9, 1997, the Superior Court affirmed the trial court's decision which denied Nara's motion to withdraw his guilty pleas.[14] Finally, by Order dated December 8, 1997, the Pennsylvania Supreme Court denied Nara's Petition for Allowance of Appeal.

On or about January 4, 1999, this Court received Nara's federal habeas corpus petition. The District Court referred the case to Magistrate Judge Francis X. Caiazza, who recommended that Nara's petition be dismissed because it was untimely filed and that a certificate of appealability likewise be denied.  The District Court adopted the Magistrate Judge's Recommendations, dismissed Nara's federal habeas petition as being filed untimely and likewise denied the certificate of appealability.

Nara filed a timely appeal to the Court of Appeals for the Third Circuit. On August 30, 2001, the Court of Appeals issued a written opinion in <u>Nara v. Frank</u>, 264 F.3d 310, 319-20 (3d Cir. 2001), *overruled in part by* <u>Carey v. Saffold</u>, 536 U.S. 214 (2002). Specifically, the Court of Appeals agreed with the District Court that Nara's petition was commenced untimely under the provisions of 28 U.S.C. § 2244(d).  Notwithstanding, the Third Circuit Court vacated the dismissal of the habeas petition as being filed untimely and remanded it to the District Court with directions to conduct an evidentiary hearing to determine

---

14.   Doc. 88, Ex. NNN.

whether the circumstances warranted the equitable tolling of the limitations period.

Specifically, the Court of Appeals ordered the District Court to conduct an evidentiary hearing based on Nara's assertions with respect to two issues: 1) whether he suffered from mental health problems at the time that he entered his guilty plea, and 2) whether his attorney in the third PCRA proceeding effectively abandoned him and prevented him from filing a timely federal habeas petition. The District Court held evidentiary hearings on October 31, 2002 and January 28, 2003. The evidence adduced at the hearings, as well as the clarification of the law as set out by the Court of Appeals for the Third Circuit after its decision in <u>Nara</u> in 1999, required this Court to conclude that the doctrine of equitable tolling was applicable to Nara's case.  Consequently, Nara's federal habeas petition was considered to have been timely filed under the doctrine of equitable tolling. *See* <u>Nara v. Frank</u>, 2004 WL 825858 (W.D. Pa. Mar. 10, 2004) (Civil Action No. 99-5).

**B. <u>Exhaustion Requirement</u>**

The provisions of the federal habeas corpus statute at 28 U.S.C. § 2254(b) require a state prisoner to exhaust his or her available state court remedies before seeking federal habeas corpus relief.  To comply with the exhaustion requirement, a state prisoner first must have fairly presented his or her constitutional and federal law issues to the state courts through

direct appeal, collateral review, state *habeas* proceedings, *mandamus* proceedings, or other available procedures for judicial review. *See, e.g.*, Castille v. Peoples, 489 U.S. 346, 351 (1989); Doctor v. Walters, 96 F.3d 675, 678 (3d Cir. 1996); Burkett v. Love, 89 F.3d 135, 137 (3d Cir. 1996).  Moreover, a petitioner must present every claim raised in the federal petition to the state's trial court, intermediate appellate court and highest court before exhaustion will be considered satisfied. *See* Orban v. Vaughn, 123 F.3d 727, 730 (3d Cir. 1997), *cert. denied*, 522 U.S. 1059 (1998). The petitioner has the burden of establishing that exhaustion has been satisfied. *See* Ross v. Petsock, 868 F.2d 639, 643 (3d Cir. 1989); O'Halloran v. Ryan, 835 F.2d 506, 508 (3d Cir. 1987).

Exhaustion is not a jurisdictional limitation, however, and federal courts may review the merits of a state petitioner's claims prior to exhaustion when no appropriate state remedy exists. *See* Christy v. Horn, 115 F.3d 201, 206 (3d Cir. 1997); Doctor, 96 F.3d at 681; Carter v. Vaughn, 62 F.3d 591, 594 (3d Cir. 1995).[15]  A petitioner shall not be deemed to have exhausted state remedies, however, if he or she has the right to raise his or her claims by any available state procedure. *See* 28 U.S.C. § 2254©).

─────────────────

15.  In addition, the amended Habeas Corpus Statute provides that a federal court may deny a petitioner's claims on the merits notwithstanding a petitioner's failure to comply with the exhaustion requirement. *See* 28 U.S.C. § 2254(b)(2) (as amended by The Antiterrorism and Effective Death Penalty Act of 1996, Pub. L. No. 104-132, 142 Cong. Rec. H3305-01 (1996).

C.   <u>**Procedural Default Doctrine**</u>

Beyond questions of exhaustion, a federal court may be precluded from reviewing claims under the procedural default doctrine. *See* <u>Gray v. Netherland</u>, 518 U.S. 152 (1996); <u>Coleman v. Thompson</u>, 501 U.S. 722, 732 (1991); <u>Doctor</u>, 96 F.3d at 678; <u>Sistrunk v. Vaughn</u>, 96 F.3d 666, 678 (3d Cir. 1996). Similar to the exhaustion requirement, the procedural default doctrine was developed to promote our dual judicial system. It is based upon the "independent and adequate state law grounds" doctrine, which dictates that federal courts will not review a state court decision involving a question of federal law if the state court decision is based on state law that is "independent" of the federal question and "adequate" to support the judgment. *See* <u>Coleman</u>, 501 U.S. at 750.

A state's procedural rules are entitled to deference by federal courts; a petitioner's violation of a state procedural rule may constitute an independent and adequate state law ground for denial of federal review of habeas claims under the procedural default doctrine. *See id.* and <u>Sistrunk</u>, 96 F.3d at 673. Moreover, violations of a state's procedural rules may constitute an independent and adequate state ground sufficient to invoke the procedural default doctrine, even where no state court explicitly has concluded that a petitioner is procedurally barred from raising his or her claims. *See* <u>Glass v. Vaughn</u>, 65 F.3d 13, 15 (3d Cir. 1995), *cert. denied*, 516 U.S. 1151 (1996); <u>Carter</u>, 62 F.3d at 595. A petitioner whose constitutional claims have not

been addressed on the merits due to procedural default can
overcome the default, thereby allowing federal court review, if
he or she can demonstrate either: 1) "cause" for the default *and*
"actual prejudice" as a result of the alleged violation of
federal law; or 2) a failure to consider the claims will result
in a "fundamental miscarriage of justice." *See* <u>Coleman</u>, 501 U.S.
at 750; <u>Carter</u>, 62 F.3d at 595.

The Respondent, who has the burden of proof, asserts that
Nara has procedurally defaulted his competency claim. *See* <u>Oelsner
v. United States</u>, 60 Fed. Appx. 412, 415, 2003 WL 1564255, *2 (3d
Cir. Mar. 27, 2003) ("Where the government asserts an affirmative
defense of procedural default, it bears the burden of proof.")
(citing <u>Bennett v. Mueller</u>, 296 F.3d 752, 762 (9th Cir. 2002)
("[T]here is good reason to place the burden of proving adequacy
on the state, the most obvious of which is that procedural
default is an affirmative defense.") and <u>Hooks v. Ward</u>, 184 F.3d
1206, 1216-17 (10th Cir. 1999) ("[T]he state is undoubtedly in a
better position to establish the regularity, consistency, and
efficiency with which it has applied [its procedural bar] than
are habeas petitioners, who often appear *pro se*, to prove the
converse."). *See also* <u>Trest v. Cain</u>, 522 U.S. 87, 89 (1997)
(quoting <u>Gray v. Netherland</u>, 518 U.S. 152, 166 (1996))("Thus,
procedural default is normally a 'defense' that the state is
'obligated to raise' and 'preserve' if it is not to 'lose the
right to assert that defense thereafter.'"). The discussion set
out *infra* reveals that the Respondent has not satisfied its

-12-

burden of showing that Nara's federal habeas petition is barred by the procedural default doctrine.

    1.   <u>"Fair Presentation"</u>

First, the Respondent asserts that Nara failed to exhaust his competency claim because he did not fairly present it as a constitutional issue in the state courts. To meet the fair presentation criterion, the same factual and legal basis for a claim must be presented to the state court in order to provide it with a reasonable opportunity to address the claim and correct any violation of federal rights. *See* <u>Duncan v. Henry</u>, 513 U.S. 364, 366 (1995) (*per curiam*). "Fair presentation requires that, before a particular claim may be asserted in federal court, the same method of analysis must have been made available to the state court." *See* <u>Chaussard v. Fulcomer</u>, 816 F.2d 925, 928 (3d Cir.), *cert. denied*, 484 U.S. 845 (1987).

Nara claims that he was incompetent to plead guilty in 1984 and that his counsel rendered ineffective assistance by failing to request a competency evaluation. In that respect, "it is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *See* <u>Medina v. California</u>, 505 U.S. 437, 439 (1992) (citing <u>Drope v. Missouri</u>, 420 U.S. 162 (1975); *see also* <u>Cooper v. Oklahoma</u>, 517 U.S. 348 (1996):

> Competence to stand trial is rudimentary, for
> upon it depends the main part of those rights
> deemed essential to a fair trial, including
> the right to effective assistance of counsel,
> the rights to summon, to confront, and to

> cross-examine witnesses, and the right to
> testify on one's own behalf or to remain
> silent without penalty for doing so.

Cooper, 517 U.S. at 354 (internal citations and quotations omitted). "Indeed, the right not to stand trial while incompetent is sufficiently important to merit protection even if the defendant has failed to make a timely request for a competency determination." *See id.* at 354, n.4 (citing Pate v. Robinson, 383 U.S. 375, 384 (1966)). The standard for competence to stand trial is whether the defendant has the "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding" and whether he has "a rational as well as factual understanding of the proceedings against him." *See* Dusky v. United States, 362 U.S. 402 (1960) (*per curiam* ) (internal quotation omitted). The competency standard for pleading guilty and waiving the right to counsel is the same as the test for competency to stand trial. *See* Godinez v. Moran, 509 U.S. 389, 396 (1993).

Nara claims that he was incompetent at the time he entered his guilty pleas.  A criminal defendant may not waive a fundamental constitutional right unless he or she proceeds "competently and intelligently." *See* Johnson v. Zerbst, 304 U.S. 458, 468 (1938).  The Supreme Court repeatedly has held that, as with any waiver of a constitutional right, the Due Process Clause of the United States Constitution requires that a guilty plea be made "knowingly, voluntarily and intelligently." *See* Boykin v. Alabama, 395 U.S. 238 (1969).  The constitutional standard raises

-14-

this question: whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *See* Boykin, 395 at 243. To determine whether a guilty plea represents a voluntary and intelligent choice, a reviewing court must examine the totality of the circumstances surrounding the plea. *See* Brady v. United States, 397 U.S. 742, 749 (1970). A plea is involuntary if it is the product of threats, improper promises, or other forms of wrongful coercion. *See* Brady, 397 U.S. at 754-55. A plea is unintelligent if the defendant has insufficient information to properly assess the advantages and disadvantages of a trial when placed in juxtaposition with a guilty plea. *See* Hill v. Lockhart, 474 U.S. 52, 56 (1985). That all being said, the Constitution requires that before accepting a guilty plea, a court must determine whether the defendant is competent to enter a plea and whether the plea is knowing and voluntary. *See* Godinez v. Moran, 509 U.S. 389, 396-400 (1993).

In order to exhaust this claim, Nara must have "fairly presented" it to all three levels of the Pennsylvania state courts. With respect to this issue, the Court of Appeals for the Third Circuit has set out the test that follows:

> To fairly present a claim, a petitioner must present a federal claim's factual and legal substance to the state courts in a manner that puts them on notice that a federal claim is being asserted . . . . It is not sufficient that a somewhat similar state-law claim was made . . . . Yet, the petitioner need not have cited "book and verse of the

federal constitution . . . .

*See* <u>McCandless v. Vaughn</u>, 172 F.3d 255, 261-62 (3d Cir. 1999)(internal citations and quotations omitted). Nara raised an incompetency claim in his second PCRA Petition by asserting that his pleas were not knowingly and intelligently entered because he was incompetent at the time he pleaded guilty. *See* Doc. 88, PCRA Hr'g Tr. at 4-8, Ex. AAA. Following hearings, the state PCRA court granted Nara relief, finding that he was incompetent to plead guilty; essentially, the PCRA court found that Nara's guilty pleas were not intelligently entered. The Commonwealth appealed the decision of the PCRA court and in his brief filed in the Pennsylvania Superior Court, Nara argued that he had "established his mental incompetence to knowingly and intelligently enter his guilty pleas." *See* Doc. 5, Commw. Ex. 12 at 6. The pertinent parts of Nara's argument follow:

> A plea entered by a defendant without the mental capacity to understand his position is not a knowingly and intelligently entered plea . . . . The test for determining a person's mental competency to enter a guilty plea is whether he had sufficient ability at the pertinent time to consult with his lawyer with a reasonable degree of rational understanding, and have a rational as well as a factual understanding of the proceedings against him . . . .

*See* Doc. 5, Superior Ct. Br. at 9-10, Commw. Ex. 12. In <u>Commonwealth v. Marshall</u>, 454 Pa. 413 (1973), a case relied on by Nara, the Pennsylvania Supreme Court cited its opinion in the case of <u>Commonwealth v. Harris</u> which sets out the relevant test for determining whether a defendant was competent to enter a

guilty plea. *See* <u>Commonwealth v. Harris</u>, 431 Pa. 114, 117 (1968).
In <u>Harris</u> the Supreme Court of Pennsylvania described the test in
the manner which follows:

> [Did the defendant] have sufficient ability
> at the pertinent time to consult with his
> lawyers with a reasonable degree of rational
> understanding, and have a rational as well as
> factual understanding of the proceedings
> against him.

*See* <u>Harris</u>, 431 Pa. at 117 (citations omitted). Due process
requires that to be competent to plead guilty, a defendant must
have had a "sufficient present ability to consult with his lawyer
with a reasonable degree of rational understanding and [that he
had] a rational as well as factual understanding of the
proceedings against him." *See* <u>Godinez</u>, 509 U.S. at 398. The
authority cited in Nara's brief clearly shows that he raised a
constitutional claim with respect to his guilty pleas; *i.e.,* that
he was incompetent at the time he entered his guilty pleas. That
said, there is no basis for the Respondent's assertion that Nara
did not fairly present his incompetency argument as a federal
claim. He relied on state cases employing the correct
constitutional analyses and presented his claim in specific terms
that directly pointed to a right protected by the Constitution.
Consequently, the Respondent's assertion that Nara failed to
exhaust his competency claim because he did not fairly present
that issue to the Pennsylvania state courts is patently without
merit. *Accord* <u>Bisaccia v. Attorney General of the State of New
Jersey</u>, 623 F.2d 307, 312 (3d Cir.) (concluding that "[b]ecause

-17-

the substance of the appellant's state claim is virtually indistinguishable from the due process allegation now before the federal court, and because the method of analysis is indistinct, . . . exhaustion of state remedies has been met"), *cert. denied*, 449 U.S. 1042 (1980).

2.   <u>Independent and Adequate State Law Ground</u>

The Respondent next argues that Nara procedurally defaulted his incompetency claim through waiver because he failed to file a motion to withdraw his plea within ten days after it was entered. *See* Pa. R. Crim. Proc. 321 (now repealed). The Respondent also argues that Nara failed to include the claim in his first PCRA Petition.  Both of these assertions, however, are legally without merit because neither rule provides an adequate state law basis to support a procedural default of Nara's claim. With respect to this issue the Court of Appeals for the Third Circuit has stated that:

> [a] state rule provides an independent and adequate basis for precluding federal review of a state prisoner's habeas claims only if: (1) the state procedural rule speaks in unmistakable terms; (2) all state appellate courts refused to review the petitioner's claims on the merits; and (3) the state courts' refusal . . . is consistent with other decisions.

*See* <u>Johnson v. Pinchak</u>, 392 F.3d 551, 558-559 (3d Cir. 2004)(citations omitted).

a.   <u>Former Pennsylvania Rule Criminal Procedure 321</u>

In his third PCRA proceeding, the Pennsylvania courts held

-18-

that Nara's competency claim was waived because he failed to timely file a motion to withdraw his guilty pleas. *See* Pa. R. Crim. Proc. 321 (now repealed).  Former Rule 321 provided that a defendant who had pleaded guilty and sought to challenge the validity of the plea must proceed by a written motion, which must be filed with the trial court within ten days after the imposition of sentence. *See id*. If the defendant failed to file a motion within the ten-day time period, the issue was waived  - provided that the trial court informed the defendant of his or her right to file post-verdict motions or a motion to withdraw the guilty plea. *See* <u>Commonwealth v. Cavanaugh</u>, 500 Pa. 313, 315, 456 A.2d 145, 147 (1983). In order for Nara's competency claim to be procedurally defaulted, the Pennsylvania courts must have consistently and regularly applied the waiver rule to clams of mental incompetency associated with either guilty pleas or a defendant's ability to  proceed to trial. *See* <u>Doctor v. Walters</u>, 96 F.3d 675, 684 (3d Cir. 1996)(quoting and citing <u>Georgia v. Ford</u>, 498 U.S. 411, 423-24 (1991))("Therefore we must examine the case law to determine whether the rule relied upon by the Superior Court . . . was 'firmly established and regularly applied.'").

As early as 1974, the Pennsylvania courts consistently have held that the issue of whether a defendant was competent to stand trial is an exception to the waiver rule in cases before the court on direct appeal. *See* <u>Commonwealth  v. Brown</u>, 872 A.2d 1139, 1153 (Pa. 2005) (citing <u>Commonwealth v. Tyson</u>, 485 Pa. 344,

349, 402 A.2d 995, 997 (1979) ("when the issue presented is whether a person was competent to stand trial, the waiver rule is not applicable."); Commonwealth v. Silo, 469 Pa. 40, 364 A.2d 893 (1976); Commonwealth v. Marshall, 456 Pa. 313, 318 A.2d 724 (1974); see also Pate v. Robinson, 383 U.S. 375, 385 (1966) (finding that it is contradictory to argue that a defendant may be incompetent, and yet knowingly or intelligently "waive" his right to have the court determine his capacity to stand trial).

Next, although the Respondent argues that the waiver rule results in a procedural default of Nara's claim, it cites no Pennsylvania cases to support its argument which shows that the Pennsylvania courts consistently and regularly applied the waiver rule with respect to mental incompetency claims; in fact, the law sways in the other direction. That said, the ultimate burden rests with a respondent to prove procedural default by showing the adequacy and independence of the state procedural rule. See Hooks v. Ward, 184 F.3d 1206, 1216-17 (10th Cir. 1999). This burden, however, is  not shouldered by a respondent until the petitioner establishes that the state procedural rule is either not adequate or not independent. See id. In other words, although the respondent bears the ultimate burden of proof or persuasion, the petitioner bears the initial burden of production; i.e., producing evidence of the state procedural rule's inadequacy or lack of independence.  To satisfy this burden, a petitioner is required to set out specific factual allegations that establishes the inadequacy of the state procedure. See Smallwood v. Gibson,

-20-

191 F.3d 1257, 1268 (10th Cir. 1999).

Here, Nara has met his burden of proof of showing that the Pennsylvania courts did not consistently and regularly apply the waiver rule in Pennsylvania Rule of Criminal Procedure 321 with respect to claims of mental incompetency. Consequently, the burden shifted back to the Commonwealth to prove that the waiver rule was adequate. The Respondent, however, has failed to satisfy its burden because it has not shown that the waiver rule related to Pennsylvania Rule of Criminal Procedure 321 was regularly and consistently applied to claims that are connected to a defendant's competency to plead guilty. The Respondent, therefore, has failed to satisfy its burden with respect to the procedural default issue and Nara's failure to comply with Pennsylvania Rule of Criminal Procedure 321 does not preclude the court from reviewing his competency claim.

> b.    <u>42 Pa. Cons. Stat. § 9544(b)</u>.

The Respondent further claims that the waiver rule set out in section 9544(b) of the PCRA is an adequate and independent state law rule which precludes federal habeas corpus review of Nara's competency claim.

In 1966, the Pennsylvania legislature enacted the Post Conviction Hearing Act ("PCHA"). *See* 42 Pa. Cons. Stat. § 9542 (repealed).  On April 13, 1988, the Pennsylvania legislature repealed the PCHA and enacted the Post Conviction Relief Act ("PCRA"). *See* 42 Pa. Cons. Stat. §§ 9541-46.  The PCRA was substantially amended in 1995 and again in 1997. Nara filed his

second post-conviction petition on April 21, 1988, eight days
after the PCRA was enacted.  At that time, the PCRA provided that
"an issue is waived if the petitioner failed to raise it and if
it could have been raised before the trial, at the trial, on
appeal, in a habeas corpus proceeding or other proceeding
actually conducted or in a prior proceeding actually conducted
under this subchapter." *See* 42 Pa. Cons. Stat. § 9544(b).
Applying this rule to Nara's second PCRA proceeding, the
Pennsylvania Superior Court held that he had waived his
incompetency claim  because he failed to raise it in his first
post conviction proceeding.

As an initial matter, this court recognizes that the
Pennsylvania Supreme Court repeatedly has held that the waiver
rules set out in the Pennsylvania Post Conviction Hearing Act and
the Pennsylvania Post Conviction Relief act are inapplicable to
competency claims.  *See* Commonwealth v. Giknis, 491 Pa. 215, 420
A.2d 419 (1980) (holding that "when the issue presented is
whether a person was competent to stand trial, the waiver rule is
not applicable.") (internal quotations and citations omitted);
Commonwealth v. Fernandez, 487 Pa. 493, 497, 410 A.2d 296, 298 n.
8 (1980) (same); Commonwealth v. Nelson, 489 Pa. 491, 497, 414
A.2d 998, 1001 (1980) (same); *see also* Commonwealth v. Brown, 872
A2d. 1139 (Pa. 2005) (holding that defendant's failure to
previously raise a claim that he was incompetent to stand trial
did not constitute a waiver of that claim for purposes of the
PCRA); Commonwealth v. Santiago, 579 Pa. 46, 855 A.2d 682, 692

n.9 (2004) (plurality opinion) ("the issue of whether a defendant
was competent to stand trial is an exception to [the waiver]
rule).

Next, the Respondent claims that Nara's incompetency cannot
affect his waiver under the PCRA waiver rule because he did not
establish that he was incompetent during his first PCRA
proceeding.  Even assuming, however, that Nara was competent
during his first PCRA proceeding, the Respondent has not
demonstrated that the PCRA waiver provision resulted in a
procedural default of his competency claim. In order for Nara's
competency claim to be procedurally defaulted, the Pennsylvania
courts  -in April of 1998-  must have consistently and regularly
applied the waiver rule to clams of mental incompetency that are
related to either guilty pleas or a petitioner's ability to
proceed to trial. Again, the Respondent has failed to demonstrate
that the PCRA waiver rule was regularly and consistently applied
to claims of incompetency.

Nara filed his first PCRA Petition on April 21, 1988. The
waiver provision in section 9544(b) of the PCRA was enacted eight
days earlier  -on April 13, 1988-  when the Pennsylvania Post
Conviction Hearing Act (PCHA) was rewritten and re-enacted as the
Pennsylvania Post Conviction Relief Act. The prior waiver
provision in the repealed PCHA provided as follows:

    (b) Issues waived.--For the purposes of this
    subchapter, an issue is waived if:

        (1) The petitioner knowingly and
        understandingly failed to raise it and it

> could have been raised before the trial, at
> the trial, on appeal, in a habeas corpus
> proceeding or any other proceeding actually
> conducted or in a prior proceeding actually
> initiated under this subchapter.
>
> (2) The petitioner is unable to prove the
> existence of extraordinary circumstances to
> justify his failure to raise the issue.

*See* 42 Pa. Cons. Stat. § 9544(b) (repealed).  As set out *supra*,

the waiver provision in section 9544(b) of the PCRA was the same

as the waiver provision in section 9544(b)(1) of the PCHA. During

this sequence of time, however, it was the rule, not the

exception, for the Pennsylvania courts to review successive post

conviction petitions. *See* <u>Commonwealth v. Lawson</u>, 519 Pa. 504

(1988). This was particularly true, as the <u>Lawson</u> court

recognized, where the petitioner asserted an ineffective

assistance of prior counsel claim, including PCRA counsel, to

overcome the waiver. As Nara points out here, during the hearings

conducted in his second PCRA proceeding, his counsel argued that

his prior PCRA counsel provided ineffective assistance. *See* Doc.

86, Ex. AAA. Moreover, the language of the waiver provisions in

the 1988 PCRA and the former PCHA is the same  -the notable

difference being the deletion of the "extraordinary

circumstances" provision.

A state procedural rule will not bar federal review of a

habeas claim unless that rule was firmly established and

regularly followed at the time the default occurred. *See* <u>Ford v.</u>

<u>Georgia</u>, 498 U.S. 411, 424 (1991) (holding that "an adequate and

independent state procedural bar to the entertainment of

constitutional claims must have been firmly established and regularly followed . . . "). As such, in determining whether a particular state rule is independent and adequate, this Court must identify the state procedural rule, determine the time at which the alleged default occurred and then decide whether the rule was firmly established and regularly and consistently applied. *See* <u>Bronshtein v. Horn</u>, 404 F.3d 700, 708 (3d Cir. 2005).

Here, the procedural rule relied upon was the waiver provision set out in section 9544(b) of the PCRA. Next, the alleged waiver occurred on April 21, 1988, when Nara filed his first PCRA petition. Finally, according to the Supreme Court of Pennsylvania in <u>Lawson</u>, prior to its decision on October 17, 1988, the waiver rule in the former PCHA, which included the same language as the 1988 PCRA, was not consistently followed. *See* <u>Laird v. Horn</u>, 159 F. Supp.2d 58, 75 (E.D. Pa. 2001) ("Since petitioner had no way of knowing throughout the pendency of his Pennsylvania Post Conviction Relief Act . . . proceedings that the Pennsylvania Supreme Court was going to change course and decline to apply the relaxed waiver rule in his case, the [shift in the law] was inadequate to preclude habeas review . . ."). The same analysis applies to Nara. Because the <u>Lawson</u> "miscarriage of justice" rule was not firmly established and regularly applied on the date when Nara filed his first PCRA petition, the doctrine of

procedural default is inapplicable in this case.[16]  *Accord*
Bronshtein v. Horn, 404 F.3d 700, 708 (3d Cir. 2005) (holding
that the PCRA one-year limitations rule applied by the
Pennsylvania Supreme Court was not firmly established); Jermyn v.
Horn, 266 F.3d 257, 279 (3d Cir. 2001) (the state procedural rule
was not "adequate" because as of the date of the procedural
default, the Pennsylvania courts routinely reviewed the merits of
second or successive PCRA petitions in capital cases).

　　　Here, Nara has met his burden of proof by showing that in
April of 1988, the Pennsylvania courts applied the waiver rules
in the PCHA and the PCRA in an inconsistent manner and allowed
the filing of second or successive PCRA petitions as a matter of
course  -particularly where the claims in the second PCRA
petition included allegations of ineffective assistance of first
PCRA counsel.  The burden shifted back to the Commonwealth and
the Respondent has not carried its burden of proof.

　　　The record, parenthetically, shows otherwise. The PCRA court
reviewed Nara's competency claim and granted him relief. Implicit
in the court's holding is the determination that Nara's claim
fits within the "miscarriage of justice" rule announced in
Lawson.  In granting Nara relief in his second PCRA petition, the
Court specifically held that a "manifest injustice" would result
if the Court denied the withdrawal of the guilty pleas in light

---

16.  In Lawson the Pennsylvania Supreme Court held that "[A] second or
any subject post-conviction request for relief will not be entertained
unless a strong *prima facie* showing is offered to demonstrate that a
miscarriage of justice may have occurred." *See* Lawson, 519 Pa. at 513.

of the evidence of Nara's incompetency. *See* Doc. 86, Ex. CCC,
citing <u>Commonwealth v. Campbell</u>, 309 Pa. Super. 214, 219, 455
A.2d 126, 128 (1983) (holding that a defendant incurs manifest
injustice when a defendant is denied leave to withdraw a plea
that was entered involuntarily).

The Respondent argues that the newly-enacted PCRA eliminated
the "extraordinary circumstances" exception to the waiver rule,
which, according to the <u>Lawson</u> court, was the basis for the
Pennsylvania courts' "overly generous" attitude in allowing the
filing of successive post conviction petitions.  As an initial
matter it appears that, notwithstanding the repeal of this
language, the court used the same language in its Memorandum:
"Therefore, absent any *extraordinary circumstances*, we deem this
matter waived in the first instance since '[appellee] failed to
raise [the issue] and . . . it could have been raised . . . in a
prior proceeding actually conducted under this subchapter.' 42
Pa.C.S.A. § 9544(b)." (emphasis added). *See* Doc. 66, Ex. EEE at
3. Consequently, while the PCRA eliminated the "extraordinary
circumstances"  language, the court relied on that precise
language in its opinion.  Thus, the pronouncement in <u>Lawson</u> does
appear to be applicable to Nara's case because the court utilized
the repealed language of the PCHA in deciding his case. As
recognized in <u>Lawson</u>, the Pennsylvania courts routinely applied
the extraordinary circumstances exception to allow the review of
waived claims based on ineffective assistance of prior PCRA
counsel. Thus, when Nara filed his PCRA petition, it was the

rule, not the exception, that the Pennsylvania courts reviewed the merits of second or successive PCRA petitions. The Pennsylvania Superior Court has addressed the issue in a similar manner:

> . . . We interpret the removal of the extraordinary circumstances language not so much as the closing of a "loophole," but rather as the extraction of excess language. Although the 1988 amendments retained ineffectiveness of counsel as a separate basis for relief under the PCRA, the amendments added the limitation that the ineffectiveness must have undermined the truth-determining process.

*See* Commonwealth v. Carbone, 707 A.2d 1145, 1150 (Pa. Super. 1998).

Also, as recognized by several scholars  -from 1988 until 1995- when the PCRA was amended, the Pennsylvania's courts developed a large body of case law establishing exceptions which by-pass the PCRA's statutory bar rules. Specifically, the Pennsylvania courts have allowed a review of claims that were barred by the PCRA's statutory waiver rules when: 1) the failure to raise the claim earlier was caused by ineffective assistance of prior counsel (including prior post-conviction counsel);[17]  2)

---

17.   *See, e.g.*, Commonwealth v. Allen, 557 Pa. 135, 144, 732 A.2d 582, 587 (1999) (holding that a claim of ineffectiveness will not be deemed waived under the PCRA where the petitioner has layered the claim by alleging the ineffectiveness of all prior counsel for failing to pursue the claim); Commonwealth v. Morales, 549 Pa. 400, 409, 701 A.2d 516, 520 (1997) ("Here, appellant could have raised all of his non-previously litigated claims on either direct appeal or in his first PCHA petition.  Appellant, however, avoided waiving these claims in this PCRA petition by asserting that all of his prior counsel were ineffective for failing to previously raise them."); Commonwealth v. Cummings, 422 Pa. Super. 202, 619 A.2d 316 (1993) (claim that trial counsel was ineffective for failing to raise defense that petitioner

the failure to address the merits of the claim could result in a "miscarriage of justice", *i.e.*, the <u>Lawson</u> standard; or 3) the claim challenged the legality of the sentence. *See* Louis Natali, Jr., <u>New Bars in Pennsylvania Capital Post-Conviction Law and Their Implications for Federal Habeas Corpus Review</u>, 73 Temple L. Rev. 69, 87 (2000) (discussing the exceptions to the statutory waiver provisions in both capital and non-capital cases).

> [T]here is no statutory basis for any of the above-described waiver-overcoming mechanisms of ineffective assistance of counsel, miscarriage of justice, and illegality of sentence, and the Pennsylvania Supreme Court has never identified any statutory basis for them.  They are entirely court-made, and they were consistently used to afford merits review to claims for which such review was foreclosed by the PCRA's statutory language.

*Id.* at 99. The discussion *supra* demonstrates that the Respondent has not carried its burden of demonstrating that the Pennsylvania courts consistently and regularly applied the statutory waiver rule to preclude claims of incompetency as raised by Nara in his 1988 PCRA petition. *See* 42 Pa. Cons. Stat. § 9544(b). Thus, this

---

was insane at time of shooting was not waived by failure to raise it at previous post conviction proceeding); <u>Commonwealth v. Dukeman</u>, 413 Pa. Super. 397, 605 A.2d 418 (1992) (holding that claims in second post-conviction petition that prior counsel were ineffective for failing to raise issues overcame bar of waiver caused by his failure to raise issues in prior postconviction proceeding); <u>Commonwealth v. Albert</u>, 522 Pa. 331, 561 A.2d 736 (1989) (holding that ineffective assistance of post conviction counsel claims are cognizable in state court). *See also* <u>Lambert v. Blackwell</u>, 134 F.3d 506, 522 n. 27 (3d Cir. 1998) ("[T]he Commonwealth acknowledged in its letter brief ... Pennsylvania decisional law holding that 'PCRA courts will consider claims which otherwise would be deemed waived when raised under the rubric of ineffective assistance of counsel . . . ."") (citations omitted).

Court is not precluded from reviewing Nara's competency claim on this basis. *See cf.* <u>Doctor v. Walters</u>, 96 F.3d 657, 686 (3d Cir. 1996) (concluding that the Pennsylvania state courts did not rely on an "adequate" procedural rule to deny petitioner a review of his appeal on the merits).

    c.   <u>42 Pa. Cons. Stat. § 9543(a)(3)</u>.

There is one last procedural hurdle applicable to Nara's competency claim. *See* 42 Pa. Cons. Stat. § 9543(a). The relevant portion of the PCRA provides as follows.

> (a) . . . .

> (3) [To be eligible for relief, a petitioner must show] [t]hat the allegation of error has not been previously litigated and one of the following applies:

>> (I) The allegation of error has not been waived.

>> (ii) If the allegation of error has been waived, the alleged error has resulted in the conviction or affirmance of sentence of an innocent individual.

>> (iii) If the allegation of error has been waived, the waiver of the allegation of error during pretrial, trial, post-trial or direct appeal proceedings does not constitute a State procedural default barring Federal habeas corpus relief.

> (4) That the failure to litigate the issue prior to or during trial or on direct appeal could not have been the result of any rational strategic or tactical decision by counsel.

*See* 42 Pa. Cons. Stat. § 9543(a) (1988). On review of Nara's second PCRA petition, the Pennsylvania Superior Court held that Nara could not establish eligibility for relief under subsection (a)(3)(i) of the PCRA rule cited immediately *supra.* The court found that the first subpart of the rule was inapplicable because Nara had waived his claim by failing to assert it in his previous PCHA petition. The Superior Court further held that subpart (a)(3)(ii) was irrelevant to Nara's claim because he had pleaded guilty and, therefore, he could not show that the alleged error resulted in either the conviction or the affirmance of the sentence of an innocent individual. Finally, the Superior Court ruled that subpart (a)(3)(iii) was inapplicable because the waiver occurred during Nara's PCRA petition and not during pretrial, trial, post-trial or direct appeal proceedings.

The Superior Court's ruling in Nara's case is inadequate to support a procedural default of his claims because the Pennsylvania courts did not routinely apply the requirements in 42 Pa. Cons. Stat. § 9543(a)(3) to claims asserted under the court-based waiver exceptions. *See, e.g.*, Commonwealth v. Jermyn, 551 Pa. 96, 709 A.2d 849 (1998) (reviewing claims in second PCRA petition alleging ineffective assistance of PCRA counsel without applying innocence prong in section 9543(a)(3)(ii)); Commonwealth v. Morales, 549 Pa. 400, 701 A.2d 516 (1997) (holding that waiver will be excused under the PCRA if appellant can meet the conditions of 42 Pa. Cons. Stat. § 9543(a)(3)(ii) or (iii) *or if the appellant makes a showing of ineffective assistance of*

*counsel*) (emphasis added); <u>Commonwealth v. Romansky</u>, 702 A.2d 1064, 1065 (Pa. Super. 1997) (showing of miscarriage of justice entitled defendant to relief on his second PCRA petition even though he "does not posit that he is innocent."), *appeal denied*, 555 Pa. 699, 723 A.2d 670 (1998); <u>Commonwealth v. Williams</u>, 442 Pa. Super. 590, 660 A.2d 614 (1995) (claim that defendant did not receive the sentence he was promised raised the possibility of a miscarriage of justice), *appeal denied*, 544 Pa. 608, 674 A.2d 1071 (1996); 2 West's Pennsylvania Practice § 17.3, <u>Eligibility for Relief: Second and Successive Petitions</u> (2004) ("The Lawson test is in the alternative; therefore, a defendant need not make a showing that his claims relate to innocence in order to be entitled to relief."). *See cf*. <u>Commonwealth v. McFadden</u>, 402 Pa. Super. 517, 521-522, 587 A.2d 740, 742 (1991) (holding that the claims presented in the instant petition were cognizable under the PCRA because the failure to request an appropriate jury instruction on accident or self-defense raised a question of whether an 'innocent individual' has been convicted).

The federal courts, interpreting the waiver and eligibility provisions of the PCRA, similarly have not interpreted the requirements in 42 Pa. Cons. Stat. 9543(a)(3) as applying to the judge-made waiver exceptions  -such as the miscarriage of justice claim. Also, the Court of Appeals for the Third Circuit has indicated that the claim asserted by Nara would be cognizable in a second PCRA petition. *See* <u>Hull v. Kyler</u>, 190 F.3d 88 (3d Cir. 1999):

> Pennsylvania courts will entertain a
> post-conviction claim that has been waived or
> that is contained in a second . . .
> post-conviction petition if the petitioner
> makes a strong prima facie showing ... that a
> miscarriage of justice may have occurred.

*See id*. at 101 n.4. In <u>Hull</u> the court also stated in *dicta* that a due process claim couched as an incompetency issue "is potentially one in which a 'miscarriage of justice' occurred which no civilized society can tolerate." *See also* <u>Crawley v. Horn</u>, 7 F. Supp. 2d 587 (E.D. Pa. 1998) (a prosecution that withholds exculpatory evidence could "satisfy the miscarriage of justice exception"); <u>Hammock v. Vaughn</u>, 1998 WL 163194 (E.D. Pa. Apr. 7, 1998) (concluding that constitutional claims such as double jeopardy, <u>Brady</u>, and ineffective assistance of counsel might be addressed under the "miscarriage of justice" exception to the 9544(b) waiver rule); <u>Belle v. Stepanik</u>, 1996 WL 663872, at *3 (E.D. Pa. Nov. 14, 1996) ("Although the PCRA statute deems waived claims that could have been raised on direct appeal or in an earlier PCRA petition, Pennsylvania courts have consistently read into the statute an exception for miscarriages of justice."); <u>Cummings v. Love</u>, 1994 WL 164122 (E.D. Pa. May 3, 1994) (noting Pennsylvania state court holding that "miscarriage of justice" is established if counsel is ineffective for failing to procure mental health expert and concluding that petitioner's claim that state violated due process and equal protection by failing to provide expert also might come within Pennsylvania's miscarriage of justice standard); <u>Sutton v. Vaughn</u>, 741 F. Supp.

564, 566 (E.D. Pa. 1990) (pointing out that Pennsylvania courts address merits of ineffective assistance of PCRA counsel claims, even when they are technically waived, under "miscarriage of justice" exception to waiver).[18]

D.  **The State Court's Adjudication of Nara's Competency Claim**

The discussion *supra* reveals that the procedural rules relied upon by the Pennsylvania Superior Court in refusing to review Nara's competency claim in his second and third PCRA proceedings are not adequate to support a procedural default of this claim in federal court. Thus, this Court can proceed to review the decision of the PCRA Court granting Nara relief on the basis of an incompetency claim.[19]

_____

18.  In addition, the Superior Court's basis for holding 42 Pa. Cons. Stat. § 9543(a)(ii) inapplicable rested upon a faulty premise.  In this regard, the Superior Court held that section 9543(a)(ii) was irrelevant to Nara because he pleaded guilty and the record was replete with his affirmations of his guilt. This finding assumes Nara's plea was voluntary and intelligent, which is a finding that involves a federal question.  Thus, that holding is not sufficiently independent to support a procedural default. Moreover, such a presumption is directly contrary to the holding of the PCRA Court, which found Nara incompetent to plead guilty. Consequently, the adequacy of his affirmations of guilt during his plea colloquy are suspect at best.

19.  Although Nara sought review of the Superior Court rulings, in each instance the Supreme Court of Pennsylvania denied his petition for allowance of appeal without any explanation.  An unexplained order of a state court upholding a prior judgment of a lower court is presumed to be based upon the same ground as that relied upon by the lower court. *See* Ylst v. Nunnemaker, 501 U.S. 797, 803 (1991).  Thus, if the lower court rejected a claim on the merits, a silent denial of an appeal is presumed to be on the merits;  if the lower court relied on a procedural default, an unexplained order affirming that judgment is presumed to similarly rely on procedural default. *Id*. Because the Supreme Court denied Nara's petitions for review without explanation, this Court must presume that the judgment relied upon the same procedural grounds relied upon by the Superior Court. As already stated, none of those procedural grounds are sufficient to support a

The PCRA Court described the state of Nara's mental health at the time he entered his guilty plea in the text which follows:

> Defendant was mentally incompetent to knowingly and intelligently plead guilty on June 20, 1984 to two (2) counts of first-degree murder.  We base this finding on the testimony elicited from a hearing held on November 19, 1990.  At that hearing, Dr. Jopindar Harika testified for the defense.
>
> Dr. Harika is a forensic psychiatrist whose field of expertise relates to the criminal aspects of psychiatry and the law. He has worked in this area since 1982 and has been a consultant with the Fayette County Prison since 1989.  Although he met with defendant only once, he did review defendant's records from his various periods of hospitalization for mental illness and his prison medical records.  Based on this, Dr. Harika expressed the opinion that at the time of the pleas, defendant was not mentally capable of knowingly and intelligently entering into guilty pleas.
>
> Dr. Harika further testified that defendant was depressed and psychotic.  The psychosis exhibited itself in defendant's losing touch with reality.  The doctor testified that although defendant may have appeared to be normal throughout the plea colloquy, this appearance of normality could be deceiving.  Defendant, in fact, could have been suffering from a mental illness.  Even though defendant may have understood the proceedings, he may not have been able to know the meaning of his answers.
>
> Part of the depression and psychosis was defendant's feelings of worthlessness, wanting to die, and his desire to be punished.  It was Dr. Harika's opinion that this was a contributing factor to defendant's willingness to plead guilty to two (2) counts

---

procedural default of Nara's claim in this Court.

-35-

of first degree murder.

     The Court found Dr. Harika to be a competent and experienced forensic psychiatrist, whose testimony was quite convincing.  The Commonwealth, however, presented no evidence to rebut or to contradict Dr. Harika's opinions and conclusions regarding defendant's mental competency at the time of the pleas.  The Commonwealth had ample time to request a competency evaluation of defendant.  However, it chose not to, and instead, relied solely upon the cross-examination of Dr. Harika and the number of times throughout the plea colloquy that defendant said he understood what was transpiring.  As we stated, even though defendant may have said he understood, it was Dr. Harika's uncontradicted testimony that defendant did not know the meaning of many of his answers.

     Hence, based on the totality of the circumstances, and particularly on the unrebutted testimony of Dr. Harika, we conclude that defendant's mental state at the time of the pleas rendered his pleas involuntary.  As such, they rise to the level of manifest injustice.

*See* Doc. 88, Ex. CCC, PCRA Ct. Op. at 3-4. The determination of whether a defendant is competent or not is a question of fact subject to deference and to the presumption of correctness. *See* 28 U.S.C. § 2254(e)(1). *See* also <u>Maggio v. Fulford</u>, 462 U.S. 111, 117 (1983) (*per curiam*); <u>Demosthenes v. Baal</u>, 495 U.S. 731, 735 (1990) (*per curiam*) ("We have held that a state court's conclusion regarding a defendant's competency is entitled to such a presumption."); <u>Thompson v. Keohane</u>, 516 U.S. 99, 111 (1995) ("In several cases, the Court has classified as 'factual issues' within § 2254(d) [a defendant's] competency to stand trial [and]

[w]hile these issues encompass more than 'basic, primary, or historical facts,' their resolution depends heavily on the trial court's appraisal of witness credibility and demeanor. . . .") (internal quotations and citations omitted). "[I]t is well established that the Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial." *See* <u>Medina v. California</u>, 505 U.S. 437, 439 (1992). It necessarily follows that a criminal defendant may not be tried unless he is competent and he may not waive his right to counsel or plead guilty unless he acts competently and intelligently. *See* <u>Godinez v. Moran</u>, 509 U.S. at 396 (internal citations omitted).

Here, the Pennsylvania PCRA Court found that Nara's guilty pleas were not knowingly made because he was incompetent at the time of the plea colloquy. Comity requires this federal court to respect the factual finding of incompetency made by the Pennsylvania state court. Under these circumstances, Nara has demonstrated that he is entitled to federal habeas corpus relief.

### III. <u>CONCLUSION</u>

It is respectfully recommended that the Petition for Writ of Habeas Corpus filed by Joseph George Nara be granted to the extent that his guilty pleas be withdrawn and the Respondent be directed to release him unless the Commonwealth commences trial within one-hundred and twenty days of the Memorandum Order.

In accordance with the Magistrate's Act, 28 U.S.C. § 636 (b)(1)(B) and (C), and Rule 72.1.4 (B) of the Local Rules for

-37-

Magistrates, objections to this Report and Recommendation are due by September 19, 2005.  Responses to objections are due by September 29, 2005. Failure to file timely objections may constitute a waiver of any appellate rights.


September 1, 2005                    s/Francis X. Caiazza
                                    FRANCIS X. CAIAZZA
                                    U.S. Magistrate Judge


cc:

Lisa B. Freeland, Esq.
Federal Public Defender's Office
1001 Liberty Avenue
1450 Liberty Center
Pittsburgh, PA  15222-3714

Christopher D. Carusone, Esq.
Office of Attorney General
15th Floor, Strawberry Square
Harrisburg, PA  17120